IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELINA ROADCLOUD | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | 13-00777 |
| | : | |
| THE CITY OF PHILADELPHIA and | : | |
| TABATHA BALDWIN ADAMS | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

FILED

JAN - 6 2014

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

MEMORANDUM,

TUCKER, C.J.

Angela Roadcloud ("plaintiff") brings this action for violations of her civil rights against her employer, defendant Philadelphia Prison System ("PPS"), as well as a supervisor, defendant Tabatha Baldwin Adams ("Adams") (collectively "defendants"). Plaintiff alleges defendants violated her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO") by discriminating against plaintiff on the basis of her gender, sexually harassing her, and creating a hostile work environment. For the reasons that follow, the Court will deny defendants' Motion to Dismiss plaintiff's Second Amended Complaint.

I. Facts

A. Background

Plaintiff, an openly gay female, began working for PPS in July 2001, eventually rising to the rank of correctional sergeant. (2d. Am. Compl. at ¶¶ 2, 25-26.) Though little is known of plaintiff's early tenure working for PPS, beginning in April 2011 plaintiff alleges the atmosphere

2

at her job began to change. (Id. at ¶ 29.) It was during this period plaintiff alleges she began to receive harassing comments from Adams, her supervisor at PPS. Adams comments focused on plaintiff's perceived lack of femininity, outwards signs plaintiff had engaged in sexual contact, and plaintiff's sexual orientation. (Id. at ¶¶ 29, 36, 38, 41, 47, 56-57, 68.) Adams harassment of plaintiff continued through June 2012, after which plaintiff was transferred to a different facility within the PPS with poorer conditions, less responsibilities, and fewer hours. (Id. at ¶¶ 31, 44, 55, 68.) Though plaintiff alleges Adams' harassment was continuous throughout 2011 and 2012, plaintiff highlights three specific incidents of harassment in her Second Amended Complaint.

### B.  April 20, 2011

On or around April 20, 2011 Adams noticed plaintiff exhibiting signs of recent sexual conduct. Specifically, Adams believed plaintiff's hair was disheveled and plaintiff was exhibiting a "passion mark." (Id. at ¶¶ 38, 41.) Adams then shared her observations with plaintiff's supervisors and co-workers. (Id. at ¶¶ 39, 43.) Specifically, upon noticing plaintiff's "passion mark," Adams stated, "look Captain [DeSouza], Roadcloud has a passion mark!" (Id. at ¶¶ 38-39.) Later, upon noticing plaintiff's disheveled hair, Adams loudly asked plaintiff if her hair was "messed up" because plaintiff "was getting some before she came to work." (Id. at ¶ 41.) Plaintiff claims Adams made these comments in front of coworkers and plaintiff's supervisors in an effort to shame and harass plaintiff for failing to conform to Adams' expectations of how a female should act and present herself. (Id. at ¶¶ 36, 40, 42, 49.) Plaintiff later requested that Adams stop making such comments in front of co-workers and supervisors, though Adams disregarded this request. (Id. at ¶¶ 44-46.)

3

### C.     June 9, 2011

On June 9, 2011 Adams was angered by plaintiff's staffing decision to re-assign Adams' cousin to a different post within the prison. (Id. at ¶ 47, Ex. A.) In response to the change, Adams began to scream at plaintiff with co-workers and supervisors nearby. (Id. at ¶ 47.) Adams then told plaintiff that Adams was aware of plaintiff's sexual preferences in a threatening manner. (Id.) Plaintiff immediately made a formal written complaint about Adams' conduct to another supervisor, Captain DeSouza, but no action was taken. (Id. at ¶¶ 51-54.)

### D.     Negative performance reviews

Plaintiff states that as a continuing part of Adams' harassment, Adams encouraged plaintiff's co-workers and subordinates to ignore and disobey plaintiff's orders. (Id. at ¶¶ 30, 59.) Plaintiff's performance reviews started to become negative in August 2011. (Id. ¶ 64.) Upon receiving her August 2011 performance review, plaintiff made a complaint to Adams regarding the content of the review. (Id. at ¶ 65.) Adams did not address the content of plaintiff's review, but instead stated, "if you don't like it, you can leave." (Id.)

### E.     Plaintiff files a complaint with the EEOC and is subsequently transferred

On January 28, 2012, plaintiff filed a charge of discrimination with the EEOC alleging sexual harassment, gender discrimination, and hostile work environment discrimination. (Id. at ¶ 66.) Defendant PPS performed its own internal investigation into plaintiff's allegations against Adams, and on March 28, 2012 found the allegations to be unfounded. (Id. at Ex. A.) After PPS cleared Adams, Adams' harassment of plaintiff increased. (Id. at ¶ 68.) Adams specifically warned plaintiff that "[she] could be messed with and nothing will happen." (Id.) Soon thereafter, plaintiff was transferred to a different facility within PPS. (Id. at ¶ 69.)

## II. Legal Standard

A court may dismiss a plaintiff's complaint under Rule 12(b)(6) only when it does not state a claim for relief that is "plausible on its face." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). All well-pleaded factual allegations contained in a plaintiff's complaint must be accepted as true and must be interpreted in the light most favorable to the plaintiff. *Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60, 74 (3d Cir. 2011). A complaint is plausible on its face when its factual allegations allow a court to draw a reasonable inference that a defendant is liable for the harm alleged. *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010).

To determine the sufficiency of a complaint, courts of the Third Circuit are required to perform a three-step analysis. *Id.* at 130. First, a court must identify plaintiff's claims and determine the required elements of those claims. *Id.* Next, a court must identify and strike allegations contained in plaintiff's complaint that are, in actuality, conclusions. *Id.* Finally, a court must determine if the remaining factual allegations, "plausibly give rise to an entitlement for relief." *Id.*

The focus of a court's inquiry into the sufficiency of a plaintiff's complaint is always plausibility of relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). This step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Plausibility does not require a plaintiff's complaint to demonstrate that entitlement to relief is likely or probable. *Argueta*, 643 F.3d at 72.

A plaintiff's complaint must only plead facts sufficient, "to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *McTernan v. City of York, PA*, 564 F.3d 636, 646 (3d Cir. 2009) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d

Cir. 2008)) (citations omitted). "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *McTernan*, 564 F.3d at 646 (citing *Phillips*, 515 F.3d at 231).

### III. Discussion[1]

#### A. <u>Sexual harassment/Hostile work environment</u>

Hostile work environment claims require a plaintiff to establish five elements: (1) the discrimination was intentional and because of the plaintiff's sex; (2) the discrimination against plaintiff was severe or pervasive; (3) the discrimination had a subjective detrimental effect on the plaintiff; (4) the discrimination was objectively detrimental; and (5) *respondeat superior* liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)). The initial four elements speak to the existence of a hostile work environment, while the fifth element is determinative of employer liability. *Mandel*, 706 F.3d at 167 (citing *Huston*, 568 F.3d 100, 104 (3d Cir. 2009). Courts must examine the facts supporting these elements in their entirety, under the totality of the circumstances, and should not parse out individual incidents. *Mandel*, 706 F.3d at 168 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("To determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'").

---

[1] The Court treats plaintiff's PHRA and Title VII claims identically as, "Pennsylvania courts have construed the protections of the two acts interchangeably." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir. 2001)).

Defendants' Motion to Dismiss challenges only the first two elements: discrimination on the basis of sex and severe or pervasive discrimination. The facts alleged in plaintiff's Second Amended Complaint sufficiently allege facts to support these two elements.

### 1. Discrimination on the basis of plaintiff's sex

Plaintiff, "an openly gay female," alleges defendants discriminated against her on the basis of her sex. (2d. Am. Compl. ¶¶ 34, 85.) Under Title VII, sexual orientation is not a protected class and cannot be the basis of a cognizable claim. *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 261 (3d Cir. 2001) (citations omitted). Nonetheless, discrimination on the basis of a plaintiff's failure to conform to expected gender stereotypes is discrimination on the basis of sex. The Third Circuit states in *Bibby* that a plaintiff may show that he or she was harassed by a member of the same sex by showing that the harasser was motivated by sexual desire, expressed a general hostility to the presence of one sex in the workplace, or acted to punish noncompliance with gender stereotypes. *Id.* at 264. *See also Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 290 (3d Cir. 2009) (noting that plaintiffs may raise a gender stereotyping claim under Title VII for punishment due to noncompliance with gender stereotypes); *Pagan v. Gonzalez*, 430 Fed.Appx. 170, 171-72 (3d Cir. 2011) (noting that while a discrimination claim based on a failure to conform to gender stereotyping is cognizable, a case based on sexual orientation discrimination is not); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989) ("In the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender.").

Plaintiff has sufficiently alleged defendants discriminated against her on the basis of her failure to conform to expected gender stereotypes. An employer that acts based upon the belief that women should not be aggressive, acts on the basis of gender. *Kay v. Independence Blue*

7

*Cross*, 142 Fed.Appx. 48, 50 (3d Cir. 2005) (citing *Price Waterhouse*, 490 U.S. at 250). Hostile or paternalistic statements or acts based upon perceptions or expected qualities of womanhood are inherently based on sex or gender. *Brown-Baumbach v. B&B Auto., Inc.*, 437 Fed.Appx. 129, 134 (3d Cir. 2011) (quoting *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 148 (3d Cir. 1999)).

Plaintiff has alleged Adams' harassment focused on plaintiff appearance, specifically the signs of sexual conduct Adams believed plaintiff exhibited. (2d. Am. Compl. at ¶¶ 38, 41.) Adams made similar comments throughout 2011 and 2012 to plaintiff's supervisors and co-workers. (Id. at ¶¶ 55-56.) Conversely, Adams did not make similar comments about women that conformed to Adams' expectations of a female. (Id. at ¶ 50.)

The Second Amended Complaint alleges plaintiff was harassed because her outward exhibition of sexual conduct did not meet defendants' expectation of how a woman should look in the workplace or act in her private life. This is sufficient to allege defendants' discrimination against plaintiff was on the basis of her sex. The mere possibility that defendants' actions were motivated by plaintiff's sexual orientation, instead of her failure to conform with gender stereotypes, cannot compel dismissal at this early stage of litigation. *Cf. Prowel*, 579 F.3d at 292 (Reversing trial court's grant of summary judgment where facts could support gender stereotyping discrimination as well as sexual orientation discrimination).

### 2. Severe or pervasive discrimination

Plaintiff's Second Amended Complaint also adequately alleges defendants' discrimination was so severe or pervasive to affect the terms and conditions of her employment. Sexual harassment is actionable when treatment is so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment. *Spain v. Gallegos*,

8

26 F.3d 439, 446-47 (3d Cir. 1994). A plaintiff need only demonstrate the harassment was severe or pervasive enough to alter the conditions of her employment, not both. *Rorrer v. Cleveland Steel Container*, 712 F.Supp.2d 422, 428 (E.D.Pa. 2010) (quoting *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006) *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Whether harassment is sufficiently severe or pervasive enough to be actionable is informed by all the underlying facts and, as such, often cannot be tested with mathematical precision. *Bellamy v. Waterfront Square Condominiums & Spa*, Civil Action No. 12-6618, 2013 WL 2333399, at *4-6 (E.D.Pa. May 29, 2013).

Under this standard, the allegations within plaintiff's Second Amended Complaint plausibly allege severe and pervasive harassment by her supervisor, Adams. Plaintiff generally asserts that between April 11, 2011 and June 2012 Adams harassed and undermined plaintiff at work by commenting on plaintiff's personal sex life and several outward indications of plaintiff's sexual preferences. (2d. Am. Compl. at ¶¶ 29-31.) Despite several complaints to Adams' superiors, plaintiff alleges Adams' harassment continued throughout this period. (Id. at ¶¶ 44, 55-56, 68.) This means that repeatedly, for a time period stretching over a year, in the presence of her colleagues and with the knowledge of her employer, plaintiff was subjected to taunts and harassment focusing on her appearance, intimate life, and personal mannerisms by her professional superior. Adams' statements had the effect of causing plaintiff considerable hardship in performing her job duties as well as stress and mental anguish. (Id. at ¶¶ 48-49, 61.)

In addition to her general allegations of harassment, plaintiff's Second Amended Complaint also recounts three specific instances of defendant Adams' harassment. In April 2011 Adams remarked on a 'passion mark' on plaintiff's neck to plaintiff's supervisor and in front of plaintiff's co-workers. (2d. Am. Compl. at ¶ 38; Id. at Ex. A.) Adams also remarked that

9

plaintiff's hair was disheveled in such a way as to make it look as if plaintiff "was getting some before [plaintiff] came to work." (Id. at ¶ 41.) On June 9, 2011, Adams yelled at plaintiff regarding a change plaintiff made to the work roster. (Id. at ¶ 47.) During this altercation, Adams allegedly threatened plaintiff with the fact that Adams knew about plaintiff's sexual preferences.[2] Finally, in August 2011, Adams began to give plaintiff negative performance reviews. (Id. at ¶ 64.) In response to plaintiff's complaints about the content of the performance reviews, Adams encouraged plaintiff to leave. (Id. at ¶ 65.)

When viewed together against the backdrop of plaintiff's more general allegations of continuous harassment, plaintiff has plausibly alleged a "complex tapestry" of actions by defendants sufficient to plausibly allege severe or pervasive discrimination. *Grasty v. World Flavors, Inc.*, Civil Action No. 11-1778, 2011 WL 3515864, at *8 (E.D.Pa. Aug. 11, 2011) (Tucker, J.) (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996)). *See also Caver v. City of Trenton*, 420 F.3d 243, 262–63 (3d Cir. 2005) (holding that courts must focus on the entire scenario confronting plaintiff, not each individual incident of harassment). At this stage of litigation, plaintiff need not allege each and every discriminatory act to sufficiently allege that the discrimination she faced was, in fact, pervasive or severe. *See Redd v. New York Div. of Parole*, 678 F.3d 166, 182 (2d Cir. 2012); *Oh v. Philadelphia Cty. Bd. Of Elections*, Civil Action No. 08-0081, 2008 WL 4787583, at *3 (E.D.Pa. Oct. 31, 2008) (stating that civil rights complaints should stand where sufficient facts are alleged to satisfy the court that the complaint is not frivolous and parties are given adequate notice to answer) (citations omitted). Taken together, plaintiff's allegations demonstrate harassment by Adams for a period of over one

---

[2] Though this allegation would appear to be attaching a sexual orientation claim to plaintiff's gender stereotype claims, plaintiff alleges Adams' comment was meant to threaten plaintiff because of her status as a masculine or sexually aggressive female. (2d. Am. Compl. at ¶ 49-50.)

10

year, which frequently subjected plaintiff to humiliation in front of her superiors and co-workers, and prevented plaintiff from effectively performing her job duties. If true, such conduct plausibly alleges an environment that was pervasive enough to state a claim against defendants.

### B. Gender discrimination

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e–2(a). To state a claim for unlawful gender discrimination under Title VII, a plaintiff must demonstrate: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances of the adverse employment action could give rise to an inference of intentional discrimination. *Mandel*, 706 F.3d at 169 (citations omitted). This inquiry is fact specific and a plaintiff need only plead facts sufficient to permit a reasonable inference that she was discriminated against because of her sex. *See Golod v. Bank of Am. Corp.*, 403 Fed.Appx. 699, 702 (3d Cir. 2010); *Salvato v. Smith*, Civil Action No. 13-2112, 2013 WL 3431214, at *7 (E.D.Pa. July 9, 2013) (stating that the inquiry must focus on circumstances that give rise to an inference of intentional discrimination and not adherence to strict mechanical formulas) (citations omitted).

The only component of plaintiff's gender discrimination claims defendants take issue with is the "intentional discrimination" element. (Defs.' Mot. to Dismiss at p. 9-11.) To satisfy the intentional discrimination element, there must be a causal connection between the adverse employment action and plaintiff's membership in a protected class. *Sommer v. Greenwood Gaming Servs. Co.*, Civil Action No. 10-2852, 2012 WL 3038158, at *5 (E.D.Pa. July 25, 2012) (Tucker, J.) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003)).

11

Plaintiff has alleged not one, but two adverse employment actions in her Second Amended Complaint: (1) negative performance evaluations beginning in August 2011 (2d. Am. Compl. at ¶ 64.); and (2) transfer to a different facility with poorer conditions, fewer responsibilities, and less hours. (Id. at ¶¶ 31, 69.) Plaintiff's allegations are sufficient to allege a change in employment status adequate to plausibly state a claim at this stage of litigation. *See Salvato*, 2013 WL 3431214, at * 8 (citing *Eubanks v. Sunoco Logistics Partners, LP*, Civil Action No. 12-1741, 2012 WL 3866961, at * 3 (E.D.Pa. Sept. 6, 2012) *and McLaughlin v. Commonwealth of Pennsylvania*, No. CIV. A. 98-CV-2686, 1999 WL 58658, at * 5 (E.D.Pa. Jan. 25, 1999)) (negative performance evaluations can be an adverse employment action). Plaintiff must, therefore, plausibly allege that either of these adverse employment actions infers impermissible discrimination. *Salvato*, 2013 WL 3431214, at * 8.

Plaintiff has also alleged a sufficient causal nexus between the two tangible employment actions and plaintiff's status as a female. Many different types of evidence can support an inference of impermissible discrimination. *Golod*, 403 Fed.Appx. at 703 n.2 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002) *overruled on other grounds by Twombly*, 550 U.S. 544). A plaintiff can point to "comparator evidence, evidence of similar [impermissible] discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting [impermissible] animus." *Id.* These categories of evidence are not exclusive and a plaintiff can demonstrate the necessary causal connection through any relevant evidence. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000) (suggestive temporal proximity and a pattern of antagonism by employer are types of circumstantial evidence a plaintiff can rely on to show causation.).

12

Here, plaintiff has alleged that defendant Adams engaged in an extended pattern of antagonism against plaintiff, including adverse employment actions taken against plaintiff. The plaintiff claims Adams' antagonism included numerous incidents of discriminatory treatment as well as comments designed to damage plaintiff's ability to perform her job. (2d. Am. Compl. at ¶¶ 44; 59-60; 68.) After plaintiff complained about receiving a negative performance review in August 2011, Adams told plaintiff, "if you don't like it, you can leave." (Id. at ¶¶ 64-65.) Additionally, between March 2012 and June 2012, Adams increased her harassment of plaintiff and stated at one point, "you can be messed with and nothing will happen." (Id. at ¶¶ 67-69.) Soon after this statement, plaintiff was actually transferred from her position. (Id. at ¶ 69.) In the light most favorable to plaintiff, these two incidents are sufficiently related to the tangible employment actions taken against plaintiff "to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *McTernan*, 564 F.3d at 646 (citations omitted).

### C. Administrative exhaustion

Plaintiffs seeking to establish a state-law discrimination claim in court must first have originally exhausted their administrative remedies by filing a charge of discrimination with the applicable state agency and allowing the agency to investigate. *See Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001). Failure to exhaust this administrative remedy is an affirmative defense akin to a statute of limitations. *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997). If raised, a defendant bears the burden of proving the plaintiff failed to exhaust his or her administrative remedies. *Id.* Though affirmative defenses are typically raised in a defendant's answer (*see* Fed. R. Civ. P. 8(c)(1)), failure to exhaust can be raised by a defendant in a motion to dismiss where the failure is apparent on the face of the complaint. *See Ray v. Kertes*, 285 F.3d 287, 295 n.8 (3d Cir. 2002); *Tlush v. Mfrs. Res. Ctr.*, 315 F.Supp.2d 650,

654 (E.D.Pa. 2002); *but see Atkinson v. Lafayette Coll.*, No. CIV.A. 01-CV-2141, 2002 WL 123449 (E.D.Pa. Jan. 29, 2002) (court declines to consider exhaustion argument under summary judgment stage).

A plaintiff exhausts her administrative remedies with respect to a specific claim if she gives the investigating agency notice of that claim. *See Baur v. Crum*, 882 F. Supp. 2d 785, 802 (E.D.Pa. 2012), *aff'd*, 517 Fed.Appx. 101 (3d Cir. 2013). Stated differently, a plaintiff that is required to exhaust her administrative remedies is limited to claims within the scope of her complaint to the agency. *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). "[T]he purpose of the filing requirement is to enable the [agency] to investigate and, if cause is found, to attempt to use informal means to reach a settlement of the dispute." *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 94 (3d Cir. 1999) (citations omitted).

Claims within the scope of an agency complaint include all claims that could reasonably grow out of allegations contained within the complaint. *Mandel*, 706 F.3d at 163. Claims reasonably grow out of an agency complaint where they share a close nexus of fact between claims explicitly raised in the complaint. *Reynolds v. Aria Health*, Civil Action No. 12-2954, 2013 WL 2392903, at *4 (E.D.Pa. May 31, 2013) *reconsideration denied,* 2013 WL 3791010 (E.D.Pa. July 22, 2013). Claims are also within the scope of an agency complaint if they would be uncovered during the agency's investigation of the original claims. *Antol*, 82 F.3d at 1295. As such, a plaintiff's failure to check a specific box on an agency form does not, by itself, resolve the issue of scope. *Howard v. Philadelphia Hous. Auth.*, Civil Action No. 13-cv-00374, 2013 WL 5761299, at *3 (E.D.Pa. Oct. 24, 2013) (citing *Barzanty v. Verizon PA, Inc.*, 361 Fed.Appx. 411, 414 (3d Cir. 2010) (unreported)).

Plaintiff's claims of sexual orientation discrimination under the PFPO were properly within the scope of her original agency complaint. To establish plaintiff's claims were within the scope of the agency complaint, the Court needs look no further than PPS' internal investigation into plaintiff's agency complaint. PPS' investigation into plaintiff's agency complaint included interviews with plaintiff's co-workers, including a December 20, 2011 interview with Officer Tyesha Garrett. (2d. Am. Compl. at Ex. B.) Unprompted, PPS' investigator questioned Garrett as to whether Adams had ever made comments regarding plaintiff's sexual preference. (Id.) Garrett confirmed that Adams had made statements about plaintiff's sexual orientation, essentially confirming plaintiff's status as a gay female to anyone that heard Adams' statement. (Id.) Garrett also told PPS' investigator of statements she heard Adams make alluding to plaintiff being sexually involved with a female co-worker. (Id.)

As early as December 20, 2011, defendant PPS had notice of plaintiff's claims of sexual orientation discrimination sufficient to cause them to investigate the matter internally. Defendants offer no reason why the PCHR would reach a different conclusion. It is defendants' burden to show plaintiff failed to exhaust her administrative remedies. They have not. Given the scope of defendants' internal investigation into plaintiff's administrative complaint, the Court has little difficulty in finding plaintiff's claim of sexual orientation discrimination was within the scope of her complaint to the PCHR.

## IV. Conclusion

For the reasons set forth above, the Court denies defendants' motion to dismiss plaintiff's claims.